In Re Kevin M. VON BEHREN and Brenda K. Von Behren, Debtors.

Jeffrey D. Richardson, Plaintiff,

v.

Kevin M. Von Behren and Brenda Von Behren, Defendants.

Bankruptcy No. 03–70523.
Adversary No. 03–7145.

United States Bankruptcy Court, C.D. Illinois.

July 29, 2004.

Jeffrey D. Richardson, Decatur, IL, trustee.

R. Stephen Scott, Springfield, IL, for Debtors.

## OPINION

LARRY L. LESSEN, Bankruptcy Judge.

The issue before the Court is whether the Debtors' discharge should be denied

pursuant to 11 U.S.C. §§ 727(a)(2)(A), 727(a)(2)(B), 727(a)(4)(A), or 727(a)(5).

Kevin Von Behren filed a petition pursuant to Chapter 7 of the Bankruptcy Code in 1985. Taking advantage of his fresh start, he started his own business, Von Behren Electric, Inc., in 1987. Mr. Von Behren is a master electrician, having learned the trade from his father. Mr. Von Behren started the business as a solo enterprise. He hired another employee in 1988. By 1991, he had about six employees. The business grew to eight employees by 1996. The business began growing much more rapidly in 1999 when the company started laying fiber optic cable for the telecommunications industry. During 2000, the company employed 200 people and grossed over $8 million.

The booming telecommunications industry went bust in late 2001, and Von Behren Electric's demise followed shortly thereafter. Von Behren Electric filed for Chapter 7 bankruptcy protection on June 5, 2002.

The personal fortunes of Kevin Von Behren and his wife, Brenda, were tied to those of Von Behren Electric. On May 16, 2002, U.S. Bank sent the Von Behrens a letter demanding payment of over $13 million pursuant to their guarantees of the Von Behren corporate debt. They did not have the assets to pay this debt, and their attorney advised them that they would have to file personal bankruptcy at some time in the future.

The Debtors were in financial trouble with three other banks in 2002. Illinois National Bank obtained a $335,000 judgment against the Von Behrens on July 29, 2002. The Von Behrens were also named in a foreclosure action brought by Carrollton Bank in September, 2002. Finally, Marine Bank obtained two judgments against the Von Behrens in November, 2002, for over $500,000. The Von Behrens

did not make payments on these judgments or on their debt to U.S. Bank.

Beginning on May 23, 2002, the Von Behrens began writing a series of checks for cash on their account with Athens State Bank. All withdrawals were for less than $10,000. The Von Behrens acknowledged that they kept their withdrawals under this figure to avoid bank reporting requirements. Over the next three weeks, they wrote nine checks totaling $55,000. Mr. Von Behren stated that he placed the cash in his desk drawer in his house.

Following the filing of the corporate bankruptcy in June, 2002, the Von Behrens left on an unscheduled two-week trip to Florida with their two minor children. Mr. Von Behren testified that they took about $4,000 in cash with them. Mrs. Von Behren testified that she took all of her jewelry with her in case they went out someplace nice for dinner. The jewelry was valued at between $30,000 and $50,000. At some point in the trip, the jewelry was lost or stolen. The Von Behrens were not sure what city they were in or what hotel they were staying at when the loss occurred. They did not report the loss to the police or to the hotel. They stated that the loss did not seem that important in light of the adverse publicity that they were getting from the local newspaper back home following the corporate bankruptcy. They also failed to report the loss to their insurance company. They said that they did not think that the loss was covered by insurance, but an insurance policy introduced into evidence showed that they did, in fact, have some coverage for the loss by theft of jewelry. The Von Behrens did not make any effort to read their policy or check with their insurance agent.

In August, 2002, the Von Behrens put down $20,000 as down payment on the

leases of two four-wheel drive Jeeps. The Jeeps retailed for $34,000 and $36,000. The Von Behrens will end up paying Chrysler $50,000 for the use of the Jeeps for two years, and at the end of the lease, they will have no residual equity. They made the decision to lease rather than purchase on the recommendation of their attorney, who advised them that the leased vehicles would be protected from creditors when they filed bankruptcy.

Mr. Von Behren canceled a scheduled Dall sheep hunting trip to Alaska in August, 2002, because he did not have the money for it. However, he went on a $6,000 elk hunting trip to New Mexico in September, 2002. In November, 2002, Mr. Von Behren went on a bear hunting trip to Kodiak, Alaska. The trip cost over $18,000, but Mr. Von Behren explained that he had paid $10,500 towards the trip before June, 2002. In order not to waste the $10,500 that he had prepaid for the trip, he decided to spend another $8,000 on it even though he owed $13 million to U.S. Bank and had several other judgments against him.

Mr. and Mrs. Von Behren filed their petition pursuant to Chapter 7 of the Bankruptcy Code on February 6, 2003. The Von Behrens scheduled total assets of $1,350,900 and total liabilities of $20,872,533.34. The Von Behrens valued their rural house on a five-acre lot at $280,000, but Schedule B valued their miscellaneous household furniture and furnishings at only $3,500. The Von Behrens based their valuation on a bid from Patricia Doyle, who operates an auction and estate sale business. However, Ms. Doyle's number was not an appraisal of all of the assets in the home, but rather a bid for certain assets. Another auctioneer had appraised the Von Behrens' personal furniture and furnishings at $5,735. The Von Behrens eventually agreed with the Trustee to a valuation of these assets at $15,000. Schedule B further showed that the Von Behrens owned two shotguns and two bows with arrows with a total value of $800.

Paragraph 8 of the Statement of Financial Affairs directed the Von Behrens to "[l]ist all losses from fire, theft, other casualty or gambling within one year immediately preceding the commencement of the case...". The Von Behrens did not list their loss of Mrs. Von Behren's jewelry in Florida seven months earlier.

Paragraph 14 of the Statement of Financial Affairs directed the Von Behrens to "[l]ist all property owned by another person that the debtor holds or controls." The Debtors answered, "None".

The Von Behrens signed both the Statement of Financial Affairs and their Schedules. With their signatures, the Von Behrens declared "under penalty of perjury" that the documents were "true and correct".

The meeting of creditors pursuant to 11 U.S.C. § 341(a) was held on April 21, 2003. At this hearing, Mr. Von Behren admitted that he probably had 22 guns, not just the two listed in the petition. He stated that the extra guns belonged to his sons. In response to a question from a creditor's attorney, the Von Behrens disclosed for the first time the loss of the jewelry in Florida.

Immediately following the conclusion of the meeting of creditors, the Trustee and his auctioneer, armed with a court order authorizing the inspection of the Von Behren's house and its contents, met the Von Behrens and their attorney at the house. Upon opening the Von Behrens' gun safe, the Trustee found 58 guns. The Trustee also found a diamond bracelet. The Trustee subsequently sold the bracelet for $4,500.

The Trustee filed a timely complaint objecting to the discharge of the Von Behrens. The Trustee alleges that the Von Behrens made several false oaths. He also alleges that they dissipated significant cash and noncash assets prior to bankruptcy by taking expensive trips and leasing expensive vehicles. The Trustee also asserts that the Von Behrens' explanation about the loss of the jewelry during the Florida vacation is incredible. The Von Behrens, of course, deny all the allegations.

■■■ A discharge provided by the Bankruptcy Code is to effectuate the "fresh start" goal of bankruptcy relief. In exchange for that fresh start, the Bankruptcy Code requires debtors to accurately and truthfully present themselves before the Court. A discharge is only for the honest debtor. *In re Garman*, 643 F.2d 1252, 1257 (7th Cir.1980), *cert. denied*, 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981). However, objections to discharge under 11 U.S.C. § 727 should be liberally construed in favor of debtors and strictly construed against objectors in order to grant debtors a fresh start. *In re Johnson*, 98 B.R. 359, 364 (Bankr.N.D.Ill.1988) (citation omitted). Because denial of discharge is so drastic a remedy, courts may be more reluctant to impose it than to find a particular debt nondischargeable. *See Johnson, supra*, 98 B.R. at 367 ("The denial of discharge is a harsh remedy to be reserved for a truly pernicious debtor.") (citation omitted). The plaintiff has the burden of proving the objection. *See* Fed. R.Bankr.P. 4005; *In re Martin*, 698 F.2d 883, 887 (7th Cir.1983) (the ultimate burden of proof in a proceeding objecting to a discharge lies with the plaintiff). The objector must establish all elements by a preponderance of the evidence. *In re Scott*, 172 F.3d 959, 966–67 (7th Cir.1999).

Pursuant to 11 U.S.C. § 727(a)(2), a court will grant a debtor a discharge unless the plaintiff can prove by a preponderance of the evidence that the debtor:

(2) with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition[.]

11 U.S.C. § 727(a)(2).

■■■ Denial of discharge under this section requires proof of actual intent to hinder, delay, or defraud a creditor. *In re Snyder*, 152 F.3d 596, 601 (7th Cir.1998); *In re Krehl*, 86 F.3d 737, 743 (7th Cir. 1996); *In re Smiley*, 864 F.2d 562, 566 (7th Cir.1989). "[P]roof of harm is not a required element of a cause of action under Section 727." *Id.* at 569. In determining whether a debtor has acted with intent to defraud under § 727, the court should consider the debtor's "whole pattern of conduct." *In re Ratner*, 132 B.R. 728, 731 (N.D.Ill.1991) (*quoting In re Reed*, 700 F.2d 986 (5th Cir.1983)). The issue of a debtor's intent is a question of fact to be determined by the bankruptcy judge. *See Smiley, supra*, 864 F.2d at 566. Actual fraudulent intent can be inferred from extrinsic evidence. *Id.; Krehl, supra*, 86 F.3d at 743; *In re White*, 63 B.R. 742, 744 (Bankr.N.D.Ill.1986) ("a debtor is unlikely to directly testify that his intent was fraudulent, the court may deduce fraudulent intent from all the facts and circumstances of a case"). "Thus, where the evidence on the intent question is such that two permissible conclusions may ra-

tionally be drawn, the bankruptcy court's choice between them will not be viewed as clearly erroneous." *Krehl, supra,* 86 F.3d at 744 (citation omitted). "Intent to defraud involves a material misrepresentation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression." *In re Chavin,* 150 F.3d 726, 728 (7th Cir.1998) (citations omitted).

 In order to prevail against a debtor on a § 727(a)(2)(A) claim, a plaintiff must prove two things: (a) the debtor transferred, removed, destroyed, mutilated, or concealed property and, if proven, (b) that the debtor had an intent to hinder, delay, or defraud his creditors.

 The Trustee asserts that, in the eight months prior to filing bankruptcy, the Von Behrens made substantial cash withdrawals from their bank account, leased expensive vehicles, and took several expensive vacations. The Von Behrens do not dispute these transactions; the issue is whether they were done with the intent to hinder, delay, or defraud their creditors. The Trustee has failed to prove by a preponderance of the evidence that the Von Behrens' excessive spending was intended to hinder, delay, or defraud creditors. Instead, the evidence suggested that the Von Behrens were spending money to maintain the high standard of living that they had grown accustomed to long after they no longer had the means to sustain it. In other words, like many other debtors, the Von Behrens were living beyond their means, but the spending was consistent with their past spending. Both Mr. and Mrs. Von Behren had salaries in excess of $150,000 per year from Von Behren Electric even though Mrs. Von Behren admitted that she had not done any work for the corporation for the two years prior to filing. They introduced evidence which showed that the expensive hunting trips were consistent with hunting trips in previous years. They also consistently drove nice cars prior to filing. The cash withdrawals from the bank were used to pay their living expenses because they lost their main source of income when the corporation filed bankruptcy. Thus, the Court is not convinced that the Von Behrens were spending money with the intent to harm their creditors. *See In re Maida,* 2000 WL 777875 at p. *3 (Bankr.N.D.Ill.) ("The mere fact that the Debtors may have, in the Creditor's view, made imprudent choices in spending their money does not equate with fraud.")

 Notwithstanding the foregoing, the Court finds that the Von Behrens concealed property of the estate with an intent to hinder, delay, or defraud creditors. The Von Behrens disclosed two guns in their schedules. At the meeting of creditors, Mr. Von Behren admitted that he had about 22 guns. It was only when the Trustee inspected the Von Behrens' gun safe that a total of 58 guns were discovered. The Trustee's inspection of the gun safe also turned up a previously undisclosed diamond bracelet which the Trustee subsequently sold for $4,500.

The Von Behrens' explanations for these omissions were not persuasive. Indeed, based on their demeanor, what they said, how they said it, and how their testimony related to the other evidence, the Von Behrens were not credible witnesses. For example, the Von Behrens explained that they did not list all of the guns in their schedules because all but two of the guns belonged to their children. However, only the two youngest boys—ages 8 and 11—lived at home; the three older boys lived away from home. The oldest son, Kevin Von Behren II is Mr. Von Behren's employer. Moreover, the Von Behrens stated in their schedules that they were not holding property owned by another per-

son. Their testimony that they did not consider their children to be "other people" fell far short of being credible. The Court also notes that the guns were never registered in the names of the children.

As to the diamond bracelet uncovered by the Trustee, Mr. Von Behren said that he had no idea why the bracelet was in the safe. Mrs. Von Behren said that she thought the bracelet was stolen with the other jewelry. As discussed next, the Court is not persuaded by the Von Behrens' jewelry theft/loss testimony.

The evidence is not clear whether the Von Behrens transferred, removed, or concealed $30,000 to $50,000 worth of jewelry. What is clear is that the Von Behrens took actions to prevent these assets from becoming part of the bankruptcy estate with the intent to hinder, delay, or defraud creditors. The Von Behrens knew that their personal bankruptcy was inevitable when they took their Florida vacation. Their attorney had advised them of this, they knew that they did not have the assets to pay the $13 million owed to U.S. Bank, their credit cards were at their limit, and their primary source of income, Von Behren Electric, was in a Chapter 7 bankruptcy. The disappearance of the jewelry under these circumstances is immediately suspicious. The Von Behrens' vagueness as to the city or hotel where this happened raises a red flag. Their failure to report the loss to the police, the hotel, or their insurance company suggests that they did not want anyone investigating the loss or that they did not want to be prosecuted for filing a false police report or insurance claim. Their explanation that the loss of this jewelry was insignificant compared to what was going on back home is so specious that the Court need not discuss it further.

The Trustee also seeks to bar the Von Behrens' discharge under § 727(a)(2)(B). The purpose of this provision is to deny a discharge to debtors who fail to disclose transactions regarding their assets subsequent to the filing of the bankruptcy petition. *In re Wolmer*, 57 B.R. 128 (Bankr.N.D.Ill.1986). The Trustee failed to introduce evidence of transactions which occurred postpetition. The Von Behrens continued the concealment of the guns and the diamond bracelet postpetition, but the Court has addressed the concealment of these items in its discussion of § 727(a)(2)(A). Therefore, § 727(a)(2)(B) is inapplicable to the facts in this case.

Section 727(a)(4)(A) of the Bankruptcy Code provides as follows:

(a) The court shall grant the debtor a discharge unless—

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account.

The purpose of § 727(a)(4) is *to enforce a debtor's duty of disclosure* and to ensure that the debtor provides reliable information to those who have an interest in the administration of the estate. *In re Carlson*, 231 B.R. 640, 655 (Bankr. N.D.Ill.1999), *aff'd* 250 B.R. 366 (N.D.Ill. 2000), *aff'd* 263 F.3d 748 (7th Cir.2001). In order to prevail under § 727(a)(4), a plaintiff must establish five elements: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with intent to deceive, and (5) the statement related materially to the bankruptcy case. *In re Bailey*, 147 B.R. 157, 163 (Bankr.N.D.Ill. 1992). If made with the requisite fraudulent intent, a false statement, whether made in the schedules or orally at a § 341 creditors' meeting, is sufficient grounds for denying a discharge provided it was knowingly made and is material. *In re Lun-*

*day,* 100 B.R. 502, 508 (Bankr.D.N.D. 1989). It is a debtor's role to consider the questions posed on the schedules and at the creditors' meeting carefully and answer them accurately and completely. *Id.* A debtor's petition and schedules constitute a statement under oath for purposes of a discharge objection under § 727(a)(4). *In re Gannon,* 173 B.R. 313, 320 (Bankr. S.D.N.Y.1994).

In *In re Yonikus,* 974 F.2d 901 (7th Cir.1992), a case that arose out of this Court, the Seventh Circuit held that a debtor's failure to list a prepetition personal injury and worker's compensation claim on his schedules constituted grounds for the revocation of the debtor's discharge. (*Yonikus* arose under § 727(d)(2), the postdischarge equivalent of § 727(a)(4)(A), because the Trustee did not learn of the personal injury and worker's compensation claim until after the discharge was issued.) In rejecting the debtor's argument that the worker's compensation award was exempt and the personal injury claim was property of his employer and not him, the court stated, "[d]ebtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or are unavailable to the bankruptcy estate." 974 F.2d at 904 (citations omitted).

■ The Schedules and Statement of Financial Affairs filed by the Von Behrens constitute statements under oath. The Trustee has demonstrated that these statements were false. The Von Behrens stated that they owned only two guns, and that they were not holding property owned by another person. Whichever story you believe, one of these statements was false; they either owned 58 guns or they owned two guns and were merely holding the other 56 guns for their children who really owned them. Further, even if one accepts the Von Behrens' dubious story about the jewelry being lost or stolen somewhere in Florida, the loss should have been disclosed in Paragraph 8 of the Statement of Financial Affairs.

The Trustee also asserts that the Von Behrens undervalued their household goods and furnishings at $3,500 in their schedules. The Von Behrens based this value on a bid from Patricia Doyle for some of the assets, although they admitted having an appraisal for all of their household goods and furnishings for $5,735 from another appraiser. The Trustee suggests that common sense would tell us that a $280,000 house would have goods and furnishings worth more than $3,500. The Trustee also notes that the Von Behrens agreed to repurchase these items from the bankruptcy estate for $15,000. The Trustee asserts that this $15,000 figure is a more accurate gauge of the value of the property.

Standing alone, the undervaluation of the household goods and furnishings might not be enough to bar the Von Behrens' discharge. However, when taken with the other evidence, it is consistent with the Von Behrens' pattern of fraud. Throughout the bankruptcy, they have failed to disclose property (guns and a diamond bracelet), disposed of property (jewelry), or undervalued property (household goods and furnishings).

The Trustee has established that the false statements were knowingly made false statements. Mr. Von Behren is an experienced businessman. Mrs. Von Behren was trained as a court reporter. The Von Behrens knew or should have known that their answers on the Statement of Financial Affairs and Schedules were inaccurate or incomplete.

■ The Trustee must also prove that the Von Behrens made the statements with fraudulent intent. To find the requi-

site degree of fraudulent intent, the Court must find that the Von Behrens knowingly intended to defraud or engaged in behavior which displayed a reckless disregard for the truth. *Yonikus, supra,* 974 F.2d at 905. If a debtor's bankruptcy schedules reflect a "reckless indifference to the truth", then the plaintiff seeking denial of the discharge need not offer any further evidence of fraud. *In re Calisoff,* 92 B.R. 346, 355 (Bankr.N.D.Ill.1988). The requisite intent under § 727(a)(4)(A) may be inferred from circumstantial evidence. *Yonikus,* 974 F.2d at 905. However, a discharge should not be denied where the untruth was the result of mistake or inadvertence. *In re Wheeler,* 101 B.R. 39, 49 (Bankr.N.D.Ind.1989). When a debtor is in doubt concerning disclosure, it is clear that the debtor is obligated to disclose. *In re Sapru,* 127 B.R. 306, 315–16 (Bankr. E.D.N.Y.1991).

The Court infers the requisite fraudulent intent from all of the circumstantial evidence. The Von Behrens stated in their schedules that they owned two guns. Given a chance to correct this statement at the meeting of creditors, the Von Behrens stated that they had a total of 22 guns in their house, a number which was less than half of the number that they actually had. Given a chance to correct their statements regarding the jewelry at the meeting of creditors, Mrs. Von Behren stated that she only had $500 worth of jewelry. She did not admit to still having the $4,500 diamond bracelet. The Von Behrens did not disclose the loss of the jewelry in response to the questions of the Trustee. The Von Behrens concocted their incredible story about losing their jewelry in some undetermined place in Florida at some undetermined time only when they were questioned about it by a creditor's attorney who apparently had one of their prior financial statements. Even then, their testimony was so vague as to be almost completely worthless. The failure to report such a loss to the appropriate authorities—the police, the hotel, their insurance agent—boggles the mind. The Von Behrens also significantly undervalued their household goods and furnishings in their schedules. The Von Behrens' free spending after the corporation filed bankruptcy and their own attorney advised them that bankruptcy was inevitable also suggests a complete disregard for the benefit of their creditors. Under these circumstances, it is easy to infer fraudulent intent.

 Finally, the Trustee must show that the Von Behrens' false statements related materially to the bankruptcy case. *In re Agnew,* 818 F.2d 1284, 1290 (7th Cir.1987). The test for materiality of the subject matter of a false oath is whether it "bears a relationship to the bankrupt's business transactions or estate, or the existence and disposition of his property." *In re Bailey,* 147 B.R. 157, 162 (Bankr. N.D.Ill.1992) (citations omitted). A false oath may be material even though it does not result in any detriment or prejudice to the creditor. *In re Sicari,* 187 B.R. 861, 881 (Bankr.S.D.N.Y.1994). The false statements and omissions from the Schedules and Statement of Financial Affairs are material to the bankruptcy case. The Von Behrens' failure to disclose the number of guns they owned (or held for others), the failure to disclose their possession of the diamond bracelet, their undervaluation of their household goods and furnishings, and their failure to accurately disclose what happened to their jewelry in Florida hindered the administration of the estate and obfuscated their true financial situation.

After considering the totality of the evidence, and considering the credibility of the witnesses, the Court finds that the Trustee has proven each element under § 727(a)(4)(A) by a preponderance of the

evidence. Therefore, the discharge must be denied.

 Section 727(a)(5) provides that "[t]he court shall grant the debtor a discharge, unless... the debtor has failed to explain satisfactorily... any loss of assets or deficiency of assets to meet the debtor's liabilities...." 11 U.S.C. § 727(a)(5). "Section 727(a)(5) is broadly drawn and clearly gives a court broad power to decline to grant a discharge in bankruptcy where the debtor does not adequately explain a shortage, loss, or disappearance of assets." *Martin, supra,* 698 F.2d at 886 (citations omitted). There are two stages of proof with respect to § 727(a)(5). *In re Bryson,* 187 B.R. 939, 955 (Bankr.N.D.Ill. 1995). First, the party objecting to discharge has the burden of proving that the debtor at one time owned substantial and identifiable assets that are no longer available for his creditors. *Id.* (citations omitted). Second, if the party objecting to the discharge meets its burden, then the debtor is obligated to provide a satisfactory explanation for the loss. *Id.* (citation omitted).

 What constitutes a "satisfactory" explanation for § 727(a)(5) purposes is left to the discretion of the court. *Baum v. Earl Millikin, Inc.,* 359 F.2d 811, 814 (7th Cir.1966); *In re Potter,* 88 B.R. 843, 849 (Bankr.N.D.Ill.1988). The debtor's explanation, however, must consist of more than "a vague, indefinite, and [an] uncorroborated hodgepodge of financial transactions." *Baum, supra,* 359 F.2d at 814. Instead, "it must be a good faith explanation of what really happened to the assets in question." *Potter, supra,* 88 B.R. at 849. "To be satisfactory, the explanation must demonstrate the debtor has exhibited good faith in conducting his affairs and explaining the loss of assets." *In re Martin,* 141 B.R. 986, 999 (Bankr.N.D.Ill.1992) (citations omitted). A debtor "cannot abuse the bankruptcy process by obfuscating the true nature of his affairs and then refusing to provide a credible explanation." *Johnson supra,* 98 B.R. at 366 (*quoting Martin, supra,* 698 F.2d at 888).

 The Trustee has shown by a preponderance of the evidence that the Von Behrens had substantial assets in the eight months prior to their filing bankruptcy that were not available to their creditors when they filed for bankruptcy protection. The Von Behrens' bank records showed them withdrawing over $100,000 from their account. While the Trustee is critical of the Von Behrens' "lavish spending" on vacations and nice vehicles, the focus of § 727(a)(5) is not on whether such spending is on illegal, immoral, or otherwise imprudent activities, but rather on the sufficiency of the explanation for the loss. *In re Reed,* 310 B.R. 363, 368 (Bankr.N.D.Ohio 2004). In this case, the Von Behrens have offered a detailed explanation of how they spent the money. While the Trustee may not like the explanation, this is not grounds for denying a discharge under § 727(a)(5).

 Notwithstanding the foregoing, the Court finds the Von Behrens' explanation for the loss of their jewelry in Florida to be totally inadequate. To borrow the language from *Baum, supra,* their explanation was "vague, indefinite and uncorroborated hodgepodge". Therefore, the Court will sustain the Trustee's objection to the Von Behrens' discharge under § 727(a)(5).

For the foregoing reasons, the Trustee's objections to the Debtors' discharge under 11 U.S.C. §§ 727(a)(2)(A), 727(a)(4)(A), and 727(a)(5) are sustained, and his objection to the Debtors' discharge under 11 U.S.C. § 727(a)(2)(B) is denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to

Rule 7052 of the Rules of Bankruptcy Procedure.