**In re Rajender K. MANTRA, Debtor.**

**Subhash Saluja, Plaintiff,**

v.

**Rajender K. Mantra, Defendant.**

**Bankruptcy No. 03 B 41933.
Adversary No. 04 A 00093.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Sept. 20, 2004.

Bruce de'Medici, Elizabeth N. Pendleton, Mendell, Menkes & Surdyk, LLC, Chicago, IL, Attorney for Plaintiff.

Gregory J. Martucci, P.C., Roselle, IL, Attorney for Debtor/Defendant.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the complaint filed by Subhash Saluja (the "Creditor") objecting to the discharge of Rajender K. Mantra (the "Debtor") pursuant to 11 U.S.C. § 727(a)(2) and § 727(a)(5). For the reasons set forth herein, the Court grants judgment in favor of the Creditor and sustains the objection to discharge under § 727(a)(5). The Debtor's discharge is denied. The Creditor's objection under § 727(a)(2), however, is overruled.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the

Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(J).

## II. *FACTS AND BACKGROUND*

The Debtor and the Creditor were business associates involved in various ventures, including an auto repair business and several taxi cab operations wherein the Debtor worked for the Creditor as a driver. In April 2000, the Debtor executed a note in favor of the Creditor in the principal sum of $55,000.00, which was secured by a junior mortgage on real property located in Chicago, Illinois (the "Property"). *See* Creditor's Group Ex. A. The mortgage was not recorded until March 2001. *Id.* The underlying debt arose when the Creditor bought a number of units in a building, which included the Property, and he then sold one of the units to the Debtor. The Creditor testified that, after crediting the payments made, the Debtor owes him in excess of $107,000.00, which includes both principal and accrued interest.

The Debtor, now residing in Canada, admitted that he executed the note and mortgage in favor of the Creditor. He testified, however, that there is no remaining debt owed to the Creditor. Although the Debtor has a PhD in finance from his native country, he asserted that he was unable to obtain a job in his field in the United States or to establish legal residence here. Instead, he worked to support himself as a cab driver while he was an illegal alien. He testified that the Creditor threatened him with deportation and that therefore, he executed the mortgage in order to "protect" his status and employment.

It is undisputed that in January 2003, the Debtor refinanced a first mortgage encumbering the Property and granted a new first mortgage to another creditor. *See* Creditor's Group Ex. B. He received over $64,000.00 from the refinance, which he deposited into his checking account. *See* Creditor's Ex. F at p. 2. Thereafter, the Debtor ceased making payments to the Creditor, and the Creditor sent a demand letter to the Debtor dated September 1, 2003. *See* Creditor's Ex. C.

The Debtor testified that he started gambling in Atlantic City, New Jersey, and thereafter began playing cards while awaiting assignments as a cab driver at O'Hare International Airport in Chicago. After receiving the cash from the refinance in January 2003, he began making withdrawals in order to gamble. According to the Debtor, he started losing thousands of dollars every month commencing in April 2003, at a time when his net monthly income as a cab driver totaled $2,000.00. He conceded that he did not claim any gambling losses on his 2002 or 2003 federal income tax returns. *See* Creditor's Exs. D and E. The Debtor failed to proffer any documentary evidence to corroborate his testimony regarding the gambling losses. He could not recall the exact sum he lost because he did not keep any records of his losses.

The Debtor denied that the mortgage he granted to the Creditor benefitted him or that the Creditor helped him finance the acquisition of the Property. Moreover, he claimed that the Creditor improperly converted money from one of his bank accounts. That is, the Debtor testified that he had given the Creditor blank, signed checks on his account as a "surety." The Creditor told him that he shredded the checks. Instead, in September 2003, using some of the checks, the Creditor took over $30,000.00 from one of the Debtor's accounts, which precipitated the filing of the bankruptcy case and the disputed claim the Creditor allegedly owes the Debtor. According to the Debtor, sometimes he gave cash to the Creditor who would in return give him a signed blank check. Ad-

ditionally, the Debtor asserted that when the Creditor sold the auto repair business and received the proceeds from that sale, the debt owed by the Debtor to the Creditor was satisfied.

On October 14, 2003 the Debtor filed a voluntary Chapter 7 petition. Among the items of personal property listed on the Debtor's Schedule B was a claim for conversion against the Creditor in the sum of $30,786.00. Although the Debtor included on Schedule D a lien against the Property in favor of the Creditor, it was listed as a disputed claim. Moreover, the Debtor's Schedule F listed various disputed debts involving several cab companies connected to the Creditor. On the Statement of Financial Affairs, the Debtor listed gambling losses of approximately $70,000.00 from funds received as a result of the January 2003 mortgage refinance. The Debtor's Statement of Intention indicated that he intended to surrender the Property.

The Creditor filed this adversary proceeding on January 27, 2004. He alleges in the complaint that at the time the Debtor refinanced the first mortgage, he did not remit any payment to the Creditor. Rather, when he received the proceeds from the refinance, the Debtor either retained them or transferred them to a third party in an attempt to conceal those assets with intent to hinder, delay or defraud in violation of 11 U.S.C. § 727(a)(2). Alternatively, the Creditor asserts that the Debtor's explanation that he lost the money as a result of gambling fails to satisfactorily explain the loss of his assets in violation of 11 U.S.C. § 727(a)(5).

### III. STANDARDS FOR OBJECTIONS TO DISCHARGE

■ The discharge provided by the Bankruptcy Code is to effectuate the "fresh start" goal of bankruptcy relief. In exchange for that fresh start, the Bankruptcy Code requires debtors to accurately and truthfully present themselves before the Court. A discharge is only for the honest debtor. *In re Garman*, 643 F.2d 1252, 1257 (7th Cir.1980), *cert. denied*, 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981). Consequently, objections to discharge under 11 U.S.C. § 727 should be liberally construed in favor of debtors and strictly against objectors in order to grant debtors a fresh start. *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir.1996) (citations omitted). Because denial of discharge is so drastic a remedy, courts may be more reluctant to impose it than to find a particular debt nondischargeable. *Soft Sheen Prods., Inc. v. Johnson (In re Johnson)*, 98 B.R. 359, 367 (Bankr.N.D.Ill.1988) (citation omitted) ("The denial of discharge is a harsh remedy to be reserved for a truly pernicious debtor."). The Creditor has the burden of proving the objections. *See* Fed. R. Bankr.P. 4005; *In re Martin*, 698 F.2d 883, 887 (7th Cir.1983) ("the ultimate burden of proof in a proceeding objecting to a discharge lies with the plaintiff"). The Creditor must establish all required elements of the objections by a preponderance of the evidence. *See In re Scott*, 172 F.3d 959, 966–67 (7th Cir.1999).

### IV. DISCUSSION

#### A. *11 U.S.C. § 727(a)(2)(A)*

Pursuant to 11 U.S.C. § 727(a)(2)(A), the Court will grant the Debtor a discharge unless the Creditor can prove by a preponderance of the evidence that:

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition[.]

11 U.S.C. § 727(a)(2)(A).

 Under § 727(a)(2)(A), an objection to discharge will be sustained if the objecting party alleges and proves the following elements: (1) the debtor transferred or concealed property; (2) belonging to the estate; (3) within one year of filing the petition; and (4) with the intent to hinder, delay or defraud a creditor of the estate. *See In re Kontrick*, 295 F.3d 724, 736 (7th Cir.2002), *aff'd*, 540 U.S. 443, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004); *Vill. of San Jose v. McWilliams*, 284 F.3d 785, 791 (7th Cir.2002); *Clean Cut Tree Serv., Inc. v. Costello (In re Costello)*, 299 B.R. 882, 894 (Bankr.N.D.Ill.2003) (citations omitted). Denial of discharge under this section requires proof of actual intent to hinder, delay or defraud a creditor. *In re Snyder*, 152 F.3d 596, 601 (7th Cir. 1998); *In re Krehl*, 86 F.3d 737, 743 (7th Cir.1996) (citations omitted); *In re Smiley*, 864 F.2d 562, 566 (7th Cir.1989) (citations omitted). In determining whether the Debtor has acted with intent to defraud under § 727, the Court should consider the Debtor's " 'whole pattern of conduct.' " *See Bennett & Kahnweiler Assocs. v. Ratner (In re Ratner)*, 132 B.R. 728, 731 (N.D.Ill.1991) (*quoting In re Reed*, 700 F.2d 986 (5th Cir.1983)). Actual intent to hinder, delay or defraud may be proven by circumstantial evidence or by inference drawn from a debtor's course of conduct. *Krehl*, 86 F.3d at 743. The issue of a debtor's intent is a question of fact to be determined by the bankruptcy judge. *Smiley*, 864 F.2d at 566. "[P]roof of harm is not a required element of a cause of action under Section 727." *Id.* at 569 (citations omitted).

 The Court finds that the Creditor has failed to prove the requisite element of fraudulent intent under § 727(a)(2)(A) with respect to the refinancing of the first mortgage or the Debtor's gambling during 2002. Although the records are not complete, and those admitted are less than crystal clear, the Court is unable to conclude that the Debtor transferred, removed, destroyed or concealed assets with intent to hinder, delay or defraud a creditor. Rather, the Debtor was fiscally irresponsible in hindsight by gambling away the cash he received from refinancing the first mortgage on the Property. The refinance, however, was spread of record and was not concealed. *See* Creditor's Group Ex. B. Moreover, based on the documentary and testimonial evidence adduced at trial, the Court will not infer fraudulent intent. The Debtor explained that in January 2003, he received the proceeds from the refinance, which he deposited in his bank account and thereafter withdrew to gamble and pay debts. *See* Creditor's Group Ex. F. The Creditor offered no persuasive evidence to rebut the Debtor's testimony that the net proceeds were spent in ways other than as the Debtor alleged. The mere fact that the Debtor may have made imprudent choices in spending his money cannot itself be equated with fraud. Instead, the Debtor has failed to explain with absolute arithmetic precision how he spent the money received from the refinance. His financial situation, caused by ongoing living expenses and losses from gambling, was exacerbated when the Creditor cashed the checks on the Debtor's bank account and ultimately led to the bankruptcy filing. Thus, the Court finds that the Debtor did not transfer, remove, destroy, mutilate or conceal assets with intent to hinder, delay or defraud a creditor. Accordingly, the Court overrules the Creditor's objection to the Debtor's discharge under § 727(a)(2)(A).

## B. *11 U.S.C. § 727(a)(5)*

■ Section 727(a)(5) of the Bankruptcy Code provides that "[t]he court shall grant the debtor a discharge, unless ... the debtor has failed to explain satisfactorily ... any loss of assets or deficiency of assets to meet the debtor's liabilities[.]" 11 U.S.C. § 727(a)(5). "Section 727(a)(5) is broadly drawn and clearly gives a court broad power to decline to grant a discharge in bankruptcy where the debtor does not adequately explain a shortage, loss, or disappearance of assets." *Martin,* 698 F.2d at 886 (citations omitted). The Court is not concerned with the wisdom of a debtor's disposition of assets but instead focuses on the truth, detail and completeness of the debtor's explanation of the loss. *See In re D'Agnese,* 86 F.3d 732, 735 (7th Cir.1996).

■ There are two stages of proof under § 727(a)(5). *Banner Oil Co. v. Bryson (In re Bryson),* 187 B.R. 939, 955 (Bankr.N.D.Ill.1995). First, the party objecting to discharge has the burden of proving that the debtor at one time owned substantial and identifiable assets that are no longer available for his creditors. *Id.* (citation omitted). Second, if the party objecting to the discharge meets his burden, then the debtor is obligated to provide a satisfactory explanation for the loss. *Id.* (citation omitted). The bankruptcy court has " 'broad power to decline to grant a discharge ... where the debtor does not adequately explain a shortage, loss or disappearance of assets.' " *D'Agnese,* 86 F.3d at 734 (*quoting Martin,* 698 F.2d at 886). What constitutes a "satisfactory" explanation for § 727(a)(5) purposes is left to the discretion of the Court. *Baum v. Earl Millikin, Inc.,* 359 F.2d 811, 814 (7th Cir.1966); *Olson v. Potter (In re Potter),* 88 B.R. 843, 849 (Bankr.N.D.Ill. 1988) (*citing Baum* ).

■ Although the explanation does not necessarily need to be comprehensive, it must meet two criteria in order to be deemed "satisfactory." *Bryson,* 187 B.R. at 956. First, it must be supported by at least some documentation. *Id.* Second, this documentation must be sufficient to "eliminate the need for the Court to speculate as to what happened to all the assets." *Id.* A debtor's explanation, however, must consist of more than "a vague, indefinite, and uncorroborated hodgepodge of financial transactions...." *Baum,* 359 F.2d at 814. "Instead, it must be a good faith explanation of what really happened to the assets in question." *Potter,* 88 B.R. at 849. "To be satisfactory, the explanation must demonstrate the debtor has exhibited good faith in conducting his affairs and explaining the loss of assets." *Bay State Milling Co. v. Martin (In re Martin),* 141 B.R. 986, 999 (Bankr.N.D.Ill.1992) (citations omitted). A debtor " 'cannot abuse the bankruptcy process by obfuscating the true nature of his affairs and then refusing to provide a credible explanation.' " *Johnson,* 98 B.R. at 366 (*quoting Martin,* 698 F.2d at 888).

■ Even though a satisfactory explanation must be convincing about this lack of concealment, the focus of the inquiry is not exclusively on the subjective nature or honesty of the debtor's explanation, but is also on the objective adequacy of such explanation. *See D'Agnese,* 86 F.3d at 734–35. Furthermore, a debtor's failure to satisfactorily justify a substantial loss of assets need not be the product of fraudulent intent. *Nof v. Gannon (In re Gannon),* 173 B.R. 313, 317 (Bankr. S.D.N.Y.1994) (citation omitted). An objecting creditor must prevail on two issues, however: the disappearance of substantial assets and the lack of a satisfactory explanation for the disappearance. *First Commercial Fin. Group, Inc. v. Hermanson*

*(In re Hermanson)*, 273 B.R. 538, 546 (Bankr.N.D.Ill.2002).

 The Creditor demonstrated that in January 2003, the Debtor obtained approximately $64,000.00 from the refinance of the first mortgage on the Property. By October 2003, those funds were no longer available for his creditors. The only evidence adduced at trial was the Debtor's testimony that he lost the money gambling. The Debtor offered no documentary or other testimonial evidence to corroborate his explanation. Those gambling loses are not reflected in his bank account records. *See* Creditor's Group Ex. F. The Court finds that the Debtor has not satisfactorily explained the loss of those funds. The Debtor simply has no corroborative records or other credible testimony to substantiate his explanation. It is not the role of the Court to sift through the Debtor's bank records in an attempt to quantify his gambling loss or determine how he spent his monthly income. While the Court does not doubt the credibility of the Debtor's undisputed testimony, standing alone, this self-serving testimony is insufficient because it is not supported by any documentary or other testimonial evidence.

 The mere fact that the Debtor engaged in illegal card gambling does not itself bar his discharge. *See In re Zidoff,* 309 F.2d 417, 418 (7th Cir.1962) *(citing In re Gentile,* 107 F.Supp. 476 (W.D.Ky. 1952)); *Hutzelman v. Luhman (In re Luhman),* 146 B.R. 163, 165 (Bankr.W.D.Pa. 1992) *(citing Indian Head Nat'l Bank v. Mitchell (In re Mitchell),* 74 B.R. 457 (Bankr.D.N.H.1987)). The majority of the decisions involving § 727 objections to discharge arising out of a debtor's gambling losses and failure to maintain records supports the proposition that a debtor must adduce some corroborating documentary or testimonial evidence to justify the gambling losses. This is especially true where the debtor keeps no records of the gambling losses. *See In re Dolin,* 799 F.2d 251, 253 (6th Cir.1986); *Napolitano v. McNamara (In re McNamara),* 310 B.R. 664, 667 (Bankr.D.Conn.2004); *Haynes v. Carter (In re Carter),* 274 B.R. 481, 485–86 (Bankr.S.D.Ohio 2002); *Solomon v. Barman (In re Barman),* 244 B.R. 896, 901 (Bankr.E.D.Mich.2000); *Sicherman v. Murphy (In re Murphy),* 244 B.R. 418, 421–22 (Bankr.N.D.Ohio 2000); *Cassady–Pierce Co. v. Burns (In re Burns),* 133 B.R. 181, 185 (Bankr.W.D.Pa.1991). The Court declines to follow the dicta in the unpublished opinion *In re Thomas,* 820 F.2d 1220 (4th Cir.1987), as urged by the Debtor, in which the Fourth Circuit found that a debtor's unsupported testimony was a satisfactory explanation.

Where there are some personal records of the debtor's affairs, such as checking account records, *Marshall v. McCaffrey (In re McCaffrey),* 216 B.R. 196, 202 (Bankr.E.D.Mich.1997), or where the debtor has other witnesses corroborate his explanation of gambling losses, such as a spouse, *Koppey v. Hirsch (In re Hirsch),* 36 B.R. 643, 645 (Bankr.S.D.Fla.1984), courts have held this evidence sufficient to overcome the objection to discharge. Unfortunately for the Debtor, he failed to proffer any such evidence. In sum, the Court finds that the Debtor failed to provide a satisfactory explanation for his gambling losses from the refinancing proceeds and the other dissipation of his assets. The Debtor's testimony alone does not constitute a satisfactory explanation for the loss of these assets for purposes of § 727(a)(5). Thus, the Court grants judgment in favor of the Creditor. The Debtor's discharge is denied under § 727(a)(5).

## V. CONCLUSION

For the foregoing reasons, the Court grants judgment in favor of the Creditor

and sustains the objection to discharge under § 727(a)(5). The Debtor's discharge is denied. The Creditor's objection under § 727(a)(2)(A), however, is overruled.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

### *ORDER*

For the reasons set forth in a Memorandum Opinion dated the 20th day of September 2004, the Court grants judgment in favor of Subhash Saluja and sustains the objection to discharge under 11 U.S.C. § 727(a)(5). Rajender K. Mantra's discharge is denied. The objection to discharge under 11 U.S.C. § 727(a)(2) is overruled.