In re Cynthia Sue FORNESS, Debtor.

Debbie Batcha, Plaintiff,

v.

Cynthia Sue Forness, Defendant.

Bankruptcy No. 8:03–BK–17668–PMG.
Adversary No. 8:03–AP–748–PMG.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 21, 2005.

Scott A. Rosin, Scott A. Rosin, PA, Tampa, FL, for Debtor.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM OPINION

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for a final evidentiary hearing on the Complaint filed by the Plaintiff, Debbie Batcha.

In the Complaint, the Plaintiff asserts that the discharge of the Debtor, Cynthia Sue Forness, should be denied pursuant to § 727(a) of the Bankruptcy Code because (1) the Debtor failed to satisfactorily explain a loss of assets, (2) the Debtor committed perjury, and (3) the Debtor fraudulently transferred, concealed, or destroyed certain property that would have become property of the estate.

The Plaintiff also asserts that the debt owed to her by the Debtor is nondischargeable pursuant to § 523(a) because the Debtor obtained the debt "under false and fraudulent pretenses and with the intent to deceive."

The Debtor filed an Answer to the Complaint and denied the material allegations.

### Background

The Plaintiff and the Debtor resided in California in 1999.

On November 10, 1999, the Plaintiff and the Debtor entered into a Loan Agreement pursuant to which the Plaintiff loaned the Debtor the original sum of $15,330.10. (Plaintiff's Exhibit 2; Debtor's Exhibit 1). The handwritten Agreement lists a series of checks payable to the Plaintiff, and states that the Plaintiff had endorsed the checks for deposit into the Debtor's bank account "with the intent of being a loan to be re-paid in full—as detailed in attached papers." No exhibits were attached to the Agreement at the time of the original loan.

On December 3, 1999, the Debtor wrote the Plaintiff a letter regarding the Loan. (Plaintiff's Exhibit 4; Debtor's Exhibit 3).

In the letter, the Debtor states that she is enclosing a check that is intended to constitute her first payment under the Loan Agreement. (Debtor's Exhibit 16). The Debtor also proposes a repayment schedule whereby she would pay the Plaintiff the sum of $300.00 per month for a period of 51.1 months (or 48 months with a $900.00 balloon payment by the end of the four-year term of the loan).

The Plaintiff contends that she loaned the Debtor an additional $4,000.00 on December 26, 1999, and an additional $2,000.00 on February 2, 2000. (Plaintiff's Exhibit 3; Transcript, p. 17).

The Debtor relocated to Pinellas County, Florida, in February of 2000.

Between June of 2000 and August of 2001, the Debtor made periodic payments to the Plaintiff in the total amount of $1,900.00. (Debtor's Exhibit 16; Transcript, pp. 22, 114–16).

In December of 2001, the Plaintiff filed a breach of contract action against the Debtor in the State Court in California. (Transcript, p. 22).

On January 27, 2003, the State Court entered a Judgment in favor of the Plaintiff and against the Debtor in the breach of contract action. The amount of the Judgment was $19,430.10. (Plaintiff's Exhibit 1).

The Debtor filed a petition under Chapter 7 of the Bankruptcy Code on August 26, 2003. The Debtor does not own any real property. On her "Schedule B—Personal Property," the Debtor listed various assets with a total value of $14,949.03. The primary asset listed on her Schedules is a 2002 Ford Explorer with a value of $14,540.00. On her "Schedule D—Creditors Holding Secured Claims," the Debtor listed MacDill Federal Credit Union as a secured creditor holding a lien on the vehicle in the amount of $20,145.84.

On her schedule of liabilities, the Debtor listed total unsecured debt in the amount of $39,437.13. The primary claims scheduled by the Debtor include a claim by the Bank of America in the amount of $7,411.00, a claim by Sears Mastercard in the amount of $11,045.99, a claim by the Silicon Valley Credit Union in the amount of $1,500.00, and the Plaintiff's claim in the amount of $19,430.10.

On her schedule of income and expenses, the Debtor disclosed that she is employed as an appraiser for the Pinellas County Appraiser's Office, and that her gross income is $1,950.00 per month, that her net income is $1,545.26, and that her expenses total $1,575.00 per month.

On her Statement of Financial Affairs, the Debtor disclosed that she had transferred a "broken waverunner" to Lisa Wright in March of 2003 for the sum of $250.00.

The § 341 meeting of creditors was conducted in the Debtor's case on September 25, 2003, and the Chapter 7 Trustee thereafter issued her Report of No Distribution.

On November 24, 2003, the Plaintiff filed the Complaint that commenced this adversary proceeding. As set forth above, the Plaintiff contends that the Debtor's discharge should be denied pursuant to § 727(a) of the Bankruptcy Code because (1) the Debtor has failed to satisfactorily explain a loss of assets, (2) the Debtor committed perjury, and (3) the Debtor fraudulently transferred, concealed, or destroyed property that would have become property of the estate.

The Plaintiff also contends that the debt owed to her should be nondischargeable pursuant to § 523(a) of the Bankruptcy Code because the Debtor obtained the debt under false and fraudulent pretenses and with the intent to deceive the Plaintiff.

## Discussion

■ The Court will limit its analysis to the specific causes of action contained in the Complaint. It appears that the Plaintiff subsequently attempted to include additional causes of action in her Trial Memorandum and in connection with the evidence offered at trial. The Court finds, however, that the new causes of action were injected after the expiration of the bar date for filing claims under § 727(a) and § 523(a) of the Bankruptcy Code, and that the new causes of action do not relate back to the original Complaint.

■ The time limitations set forth in Rule 4004(a) and Rule 4007(c) for filing actions under § 727 and § 523 are strictly construed. *In re Lazenby*, 253 B.R. 536, 537–38 (Bankr.E.D.Ark.2000). "The general inquiry is whether the defendant is on notice, as stated in the general fact situation set forth in the complaint, he may be held liable for particular conduct." *In re Lazenby*, 253 B.R. at 539. The theories of liability under the various subsections of § 727(a) and § 523(a), however, involve separate instances of conduct and separate factual situations. Consequently, the untimely addition of new causes of action under § 727 and § 523 is generally not permitted. *Id.* at 539.

For these reasons, the Court will evaluate only those causes of action specifically pled in the Plaintiff's Complaint, and will not consider the causes of action or theories of liability added in the Plaintiff's Trial Memorandum or introduced for the first time at trial.

### I. Section 727(a)

■ Section 727(a) of the Bankruptcy Code "may be used to deny a discharge to dishonest debtors, however unfortunate." *In re Moeritz*, 317 B.R. 177, 182 (Bankr.M.D.Fla.2004)(quoting *In re Ma-*

*tus,* 303 B.R. 660, 670 (Bankr.N.D.Ga. 2004)).

■ Objections to discharge under 11 U.S.C. § 727, however, should be "liberally construed in favor of debtors and strictly against objectors in order to grant debtors a fresh start." *In re Zwirn,* 2005 WL 1978510, at *2 (Bankr.S.D.Fla.).

■ Rule 4005 of the Federal Rules of Bankruptcy Procedure provides that "[a]t the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection." Fed.R.Bankr.P. 4005. "The objector must establish all required elements of the objection by a preponderance of the evidence." *In re Zwirn,* 2005 WL 1978510, at *2.

### A. Section 727(a)(5)

■ The Plaintiff alleged in the Complaint that the Debtor's discharge should be denied because she "failed to satisfactorily explain loss of assets." Section 727(a)(5) of the Bankruptcy Code provides:

**11 USC § 727. Discharge**

(a) The court shall grant the debtor a discharge, unless—

. . . . .

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

11 U.S.C. § 727(a)(5). "There are two stages of proof under § 727(a)(5). (Citation omitted.) First, the party objecting to discharge has the burden of proving that the debtor at one time owned substantial and identifiable assets that are no longer available for his creditors. (Citation omitted.) Second, if the party objecting to the discharge meets his burden, then the debtor is obligated to provide a satisfactory explanation of the loss." *In re Mantra,* 314 B.R. 723, 730 (Bankr.N.D.Ill.2004).

■ With respect to the first stage of proof, the objecting creditor must show that the debtor had a "cognizable legal or equitable interest in the property involved not too far removed in time from the date of the commencement of the case." *In re Laing,* 2005 WL 1925775, at *10 (Bankr. M.D.Fla.).

■ The Plaintiff asserted in this case that she "would like to know what happened to the debtor's numerous assets of significant value (i.e. hand and power tools, recreational equipment, electronics, and clothing, etc.) which creditor personally assisted debtor in packing, storing, shipping and moving in February 2000." (Doc. 1, p. 2).

The Plaintiff introduced a "Pickup/Delivery and Storage Agreement" between the Debtor and Public Storage Pickup & Delivery, LP dated January 12, 2000, together with the ledger of the foreclosed account. (Plaintiff's Exhibit 34). The ledger reflects that a "lien sale" of the storage unit's contents was conducted (postpetition) on April 29, 2004, and that a balance remained owing on the account after the sale.

The Debtor testified that the personal property listed on her schedules consisted primarily of the contents of the storage unit. (Transcript, p. 167). Specifically, the Debtor listed the following items of personal property on her schedules:

Clock(s), $2.00; Lamp(s), $2.00; Television, $10.00; Stereo(s), $10.00; VCR(s), $5.00; Beds, $20.00; Dresser(s)/Bureau(s), $20.00; Nightstand(s), $5.00; Assorted Decorations and Wall Hangings, $30.00; Some Tools, $20.00; Desk, $20.00; Bicycle, $10.00

CD's, $20.00; Books, $10.00

Clothing and Wearing Apparel

Jewelry

Camera—12 yrs old, Basketball

(Doc. 1 in Case No. 8:03–bk–17668–PMG; Schedule B—Personal Property). Miscellaneous personal property and knickknacks were also listed on the Debtor's schedules.

Based on the evidence presented, the Court finds that the Plaintiff did not identify any *specific* asset that the Debtor owned within a reasonable period of time before the filing of her bankruptcy petition, that was not accounted for in the Debtor's case. Although the Plaintiff described general categories of personal property owned by the Debtor, such as tools, recreational equipment, and electronics, the Court cannot determine that any particular asset was omitted from the Debtor's schedules. In other words, the Court is not left to wonder where any specific asset of significance went. *In re Ottoson–King,* 3 Fed.Appx. 147 (4th Cir.).

The Plaintiff failed to satisfy her burden of proof under § 727(a)(5) of the Bankruptcy Code.

**B. Section 727(a)(4)**

 The Plaintiff alleged in the Complaint that the Debtor's discharge should be denied because she "committed perjury." Section 727(a)(4) provides:

**11 USC § 727. Discharge**

(a) The court shall grant the debtor a discharge, unless—

. . . . .

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath.

11 U.S.C. § 727(a)(4). The purpose of § 727(a)(4)(A) is to ensure that debtors disclose adequate information regarding their assets and financial affairs. *In re*

*Zwirn,* 2005 WL 1978510, at *5. To prevail under § 727(a)(4)(A), a creditor must prove that (1) the debtor made a statement under oath; (2) that the statement was false; (3) that the debtor knew the statement was false; (4) that the debtor made the statement with the intent to deceive; and (5) that the statement related materially to the bankruptcy case. *Id.* at *5.

 In the Complaint, the Plaintiff alleges that there "are numerous inaccuracies and omissions in the petition filed, such as the amount of debt owed, dates when debts were incurred." (Doc. 1, p. 3). At trial, the Plaintiff presented several exhibits intended to evidence the falsity of the statements in the Debtor's schedules. The evidence includes the following:

1. A credit application submitted by the Debtor to Ford Credit on December 28, 2002, in connection with her purchase of a 2002 Ford Explorer. (Plaintiff's Exhibit 19). On the Application, the Debtor stated that her gross monthly salary was $2,000.00. The Debtor stated on her bankruptcy schedules dated July 21, 2003, however, that her gross monthly income was $1,950.00.

2. The bank statements for the Debtor's checking account at Bank of America. (Plaintiff's Exhibit 31). The statements reflect that the balance in the account on July 21, 2003, the date on which the Debtor signed her schedules, was $726.42. (See also Transcript, p. 80). The Debtor stated on her bankruptcy schedules signed on July 21, however, that the balance in the checking account was only $50.00.

Significantly, the bank statements also show that the balance in the account of as of August 26, 2003, the date the bankruptcy petition was filed, was $42.96, and the Debtor testified that the balance was less than $50.00 on the date that the

petition was filed. (Transcript, p. 165–66.)

3. The Debtor's paychecks for the period from April of 2003 to September of 2003. (Plaintiff's Exhibit 32). The Debtor received a paycheck dated August 15, 2003, in the amount of $993.94. The Debtor also withdrew the sum of $70.00 from an ATM in August of 2003. (Plaintiff's Exhibit 31). The bankruptcy petition was filed on August 26, 2003. The Plaintiff contends, therefore, that the Debtor falsely stated on her schedules that she had only $10.00 "cash on hand" as of the date of filing. (Transcript, p. 86).

4. The Payroll Activity Report from the Debtor's employer. (Plaintiff's Exhibit 35). The Plaintiff contends that the Debtor's year-to-date income as of August 26, 2003, was $16,591.31, and not $12,000.00 as listed on the Debtor's Statement of Financial Affairs. (Transcript, p. 98).

■■■ "Whether a debtor made a false oath within the meaning of § 727(a)(4)(A) is a question of fact." *In re Zwirn*, 2005 WL 1978510, at *6.

■■■ In this case, although the Plaintiff has revealed some inaccuracies on the Debtor's schedules, the Court finds that the Plaintiff has not proved that the discrepancies were material, or that the Debtor intended to defraud her creditors by making false statements on the schedules. The value associated with the discrepancies is minimal, for example, and the revelation of the discrepancies did not lead to the discovery of assets for the estate. *In re Pond*, 221 B.R. 29, 34 (Bankr.M.D.Fla. 1998). As set forth above, a debtor's intent to deceive her creditors is a required element under § 727(a)(4)(A). The intent to defraud will not be presumed, however, especially where the discrepancies involve little or no value for the estate. *In re*

*Pond*, 221 B.R. at 34; *In re Zwirn*, 2005 WL 1978510, at *7.

The Plaintiff failed to satisfy her burden of proof under § 727(a)(4) of the Bankruptcy Code.

## C. Section 727(a)(2)(A)

■■■ The Plaintiff alleged in the Complaint that the Debtor's discharge should be denied because she "fraudulently transferred, concealed, or destroyed property that would have become property of the estate." Section 727(a)(2)(A) of the Bankruptcy Code provides:

**11 USC § 727. Discharge**

(a) The court shall grant the debtor a discharge, unless—

. . . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition.

11 U.S.C. § 727(a)(2)(A). To prevail under § 727(a)(2)(A), a creditor must prove that (1) the debtor transferred or concealed property, (2) the property belonged to the debtor, (3) the transfer occurred within one year of the petition, and (4) the debtor intended to hinder, delay, or defraud a creditor by making the transfer. *In re Zwirn*, 2005 WL 1978510, at *3. Denial of a discharge under this section requires proof of actual fraudulent intent. *In re Mantra*, 314 B.R. 723, 729 (Bankr.N.D.Ill. 2004).

The Plaintiff's allegations under § 727(a)(2)(A) focus on two separate transactions that occurred within the year prior to the filing of the Debtor's bankruptcy petition.

First, on December 28, 2002, the Debtor traded in a 1993 Ford Ranger pickup truck and purchased a 2002 Ford Explorer. (Plaintiff's Exhibit 19). The purchase price for the Explorer was $21,991.00, and the Purchase Agreement reflects that the Debtor received the sum of $5,850.00 as the trade-in value for the Ranger. The Debtor financed the purchase of the Explorer through MacDill Federal Credit Union.

The Plaintiff contends that the transaction had the effect of removing the Ranger as a potential asset of the estate, and replacing it with a fully-liened vehicle in which the Debtor has no equity. (Transcript, pp. 45–46).

The Purchase Agreement reflects that the 1993 Ford Ranger had 97,855 miles on the odometer at the time of the trade-in in December of 2002. (Plaintiff's Exhibit 19). The Debtor testified that she entered the transaction because she needed a reliable vehicle in connection with her work as a property appraiser for the Pinellas County Appraiser's Office. When asked why she traded in the Ranger, she stated:

A: Because it did not run well. I had put—actually, you probably notice on some of those credit card bills that it was for truck repairs. I was trying to avoid having to buy a new vehicle. So I was putting a lot of money into it and, eventually, I—well, it didn't run, I couldn't get it into first gear. Second was getting a little tough too. And I use my vehicle for work every day. I've got to have a reliable vehicle or else I cannot do my job.

Q: Is that part of your employment? Does it involve a lot of driving?

A: Absolutely.

(Transcript, p. 168). The Explorer is listed on the Debtor's schedules with a value of $14,540.00.

The second transfer challenged by the Plaintiff involves the Debtor's sale of a wave runner to her friend, Lisa Wright, shortly before the filing of the bankruptcy petition. (Transcript, p. 52).

The Debtor signed a handwritten, undated "Bill of Sale" in which she stated that "I, Cynthia S. Forness, sold Lisa A. Wright one waverunner (no engine) & trailer (Tag No. T87ZZA) on March 3rd 2003 for $250.00 paid by check # 4456." (Plaintiff's Exhibit 20). The records of the Division of Motor Vehicles indicate that title to the wave runner was transferred to Lisa Wright on May 14, 2003. (Plaintiff's Exhibit 23).

The Debtor testified that the wave runner was not operable at the time of the transfer. (Transcript, p. 170). The documentary evidence supports the conclusion that the wave runner was eight years old and in poor condition. See, for example, Plaintiff's Exhibit 20, which includes documentation regarding repairs that had been performed, and additional repairs that would be needed, to restore the wave runner to operable condition. The Debtor testified that she had received an estimate that further repair costs would total approximately $800.00. (Transcript, p. 171).

The Debtor disclosed the transfer of the wave runner on the Statement of Financial Affairs in her bankruptcy case.

Based on the evidence, the Court finds that the Plaintiff failed to establish that the Debtor entered into either of the challenged transfers with the intent to defraud her creditors. "Courts should consider a debtor's whole pattern of conduct when determining whether the debtor act-

ed with intent to defraud." *In re Zwirn,* 2005 WL 1978510, at *3.

With respect to the purchase of the Explorer, the evidence shows that the Debtor relies on her vehicle in connection with her employment, and that her former vehicle was no longer economical to maintain. The evidence also shows that the wave runner was in poor condition, and that the cost to repair it was prohibitive. The Court cannot conclude that the bankruptcy estate was significantly diminished by either of the transactions. On the contrary, it appears that the Debtor purchased the Explorer and sold the wave runner for legitimate financial reasons, and not to remove assets from the reach of her creditors.

The Plaintiff failed to satisfy her burden of proof under § 727(a)(2)(A) of the Bankruptcy Code.

### D. Conclusion

The Court has found that the Plaintiff failed to establish the causes of action set forth in § 727(a)(5), § 727(a)(4), or § 727(a)(2)(A) by a preponderance of the evidence. Consequently, the Debtor's discharge should not be denied pursuant to those provisions.

### II. Section 523(a)

Alternatively, the Plaintiff seeks a determination that the particular debt owed to her is nondischargeable pursuant to § 523(a)(2)(A) of the Bankruptcy Code. Specifically, the Plaintiff alleges that the "Debtor obtained debt under false and fraudulent pretenses and with the intent to deceive."

Section 523(a)(2)(A) of the Bankruptcy Code provides:

**11 USC § 523. Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A). To establish the nondischargeability of a debt under § 523(a)(2)(A), a creditor must show that (1) the debtor made a false representation with the intent to deceive the creditor; (2) the creditor relied on the representation; (3) the reliance was justified; and (4) the creditor sustained a loss as a result of the misrepresentation. *In re Mansour,* 2005 WL 1411912, at *4 (Bankr.S.D.Fla.). A particular debt is nondischargeable under § 523(a)(2)(A) if the creditor shows that "the Debtors made a material false representation with the intent to deceive." *In re Grant,* 325 B.R. 728, 734 (Bankr. W.D.Ky.2005).

As set forth above, the Plaintiff and the Debtor entered into a Loan Agreement on November 10, 1999, pursuant to which the Plaintiff loaned the Debtor the original sum of $15,330.10. (Plaintiff's Exhibit 2; Debtor's Exhibit 1). The terms of repayment were not stipulated in the original Loan Agreement. On December 3, 1999, the Debtor wrote the Plaintiff a letter regarding the Loan, and proposed a repayment schedule whereby she would pay the Plaintiff the sum of $300.00 per month over a period of approximately 48 months. (Plaintiff's Exhibit 4; Debtor's Exhibit 3). The Plaintiff contends that she loaned the Debtor an additional $4,000.00

733

on December 26, 1999, and an additional $2,000.00 on February 2, 2000. (Plaintiff's Exhibit 3).

The Plaintiff testified that the purpose of the original Loan was to enable the Debtor to satisfy her outstanding credit card debt, but that the Debtor did not use the proceeds of the Loan for the intended purpose. Instead, the Plaintiff contends that the Debtor spent the money on on-line gambling sites, as shown by the bank statements for the Debtor's account at California Federal Bank. (Plaintiff's Exhibit 5; Transcript, p. 21). The Plaintiff also contends that she was fraudulently induced to make the additional loans in December of 1999 and February of 2000 by virtue of the assurance of payment in the Debtor's letter dated December 3, 1999. (Transcript, pp. 20–21).

The Plaintiff has failed to satisfy her burden of proving that the Debtor "made a material false representation with the intent to deceive" her at the time that the loan was extended. *In re Grant*, 325 B.R. at 734.

The original Loan Agreement contains no statement that the loan was intended to enable the Debtor to satisfy her existing indebtedness. (Plaintiff's Exhibit 2). Although the Debtor wrote a letter to the Plaintiff on December 3, 1999, in which she stated that "the reason you gave me the loan was to pay off my credit cards and loans," she also stated at that time that she had in fact satisfied the debt. (Plaintiff's Exhibit 4).

The bank records submitted by the Plaintiff do not clearly demonstrate that the Debtor used the loan proceeds solely for unintended purposes. The loan proceeds were deposited into the Debtor's bank account in two separate transactions on October 25, 1999, and November 12, 1999. (Plaintiff's Exhibit 5). On November 1 and November 2, 1999, within a week after the first deposit, two checks cleared the account in the amounts of $2,804.00 and $1,500.00, respectively. Further, on November 30, 1999, after the second deposit had been made, a check cleared the account in the amount of $5,030.00. The bank records do not reflect the identity of the payees, or whether the checks may have been written to satisfy or reduce the Debtor's existing credit card debt.

Further, it is not clear from the record that the Debtor did not intend to repay the Loan at the time of the original Agreement. The Plaintiff acknowledges that the Debtor was employed at the time that the Loan was extended, but lost her job shortly thereafter. (Transcript, p. 18). The Debtor tendered her final paycheck to the Plaintiff with the letter dated December 3, 1999, less than one month after the Loan was made, as a first installment under the payment schedule proposed in the letter. (Plaintiff's Exhibit 4). In the same letter, she also offered to transfer the wave runner to the Plaintiff in partial satisfaction of the Loan, but testified that the Plaintiff "didn't think that was necessary." (Plaintiff's Exhibit 4, Transcript, p. 157). Between June of 2000 and August of 2001, the Debtor made additional periodic payments to the Plaintiff in the total amount of $1,900.00. (Debtor's Exhibit 16; Transcript, pp. 114–16).

Based on all of the circumstances, the Court finds that the Plaintiff did not establish that the Debtor made any specific, false representation that induced her to make the Loan, or that the Debtor induced her to make the Loan under false pretenses. The Debtor's conduct in her defense of the subsequent breach of contract action is irrelevant to the issue of whether the initial debt was "obtained by false pretenses, a false representation, or actual fraud" within the meaning of § 523(a)(2)(A) of the Bankruptcy Code.

The Plaintiff failed to prove that the particular debt owed to her by the Debtor is nondischargeable pursuant to § 523(a)(2)(A). Consequently, the debt is determined to be dischargeable in the Debtor's chapter 7 case.

### III. Section 523(d)

 The Debtor requests an award of the attorney's fees and costs that she has incurred in connection with her defense of this proceeding. Section 523(d) of the Bankruptcy Code provides:

**11 USC § 523. Exceptions to discharge**

. . .

(d) If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award just.

11 U.S.C. § 523(d). The Debtor's request should be denied in this case. The Court cannot find that the position of the Plaintiff was "not substantially justified" within the meaning of § 523(d). *In re Talarico*, 234 B.R. 182, 184 (Bankr.M.D.Fla.1999).

### Conclusion

The Plaintiff contends that the Debtor's discharge should be denied pursuant to § 727(a) of the Bankruptcy Code, and also that the particular debt owed to her should be determined to be nondischargeable pursuant to § 523(a)(2) of the Bankruptcy Code.

The relief requested by the Plaintiff should be denied. The Plaintiff has not established by a preponderance of the evidence that the Debtor failed to satisfactorily explain any loss of assets within the meaning of § 727(a)(5), that the Debtor made a false oath within the meaning of § 727(a)(4), or that the Debtor transferred or concealed property with the intent to defraud her creditors within the meaning of § 727(a)(2)(A) of the Bankruptcy Code.

Further, the Plaintiff has not established that the Debtor obtained the Loan from the Plaintiff by false representations or actual fraud within the meaning of § 523(a)(2)(A) of the Bankruptcy Code.

Final judgment should be entered in favor of the Debtor and against the Plaintiff on the Complaint.

The Debtor's request for an award of attorney's fees and costs under § 523(d) should be denied, however, because the Court cannot find that the Plaintiff's position in this proceeding was not substantially justified.

Accordingly:

**IT IS ORDERED** that:

1. A separate Final Judgment shall be entered in favor of the Debtor, Cynthia Sue Forness, and against the Plaintiff, Debbie Batcha, on the Plaintiff's Complaint.

2. A Discharge shall be entered in the Chapter 7 case of the Debtor, Cynthia Sue Forness.

3. The debt owed by the Debtor, Cynthia Sue Forness, to the Plaintiff, Debbie Batcha, is determined to be dischargeable in the Debtor's bankruptcy case.

4. The Debtor's request for an award of attorney's fees and costs is denied.